UNITED STATES DISTRICT COURTF
DISTRICT OF MASSACHUSETTS

DIANE RUTH WEEKS,    )
            )
     Plaintiff,   )
            )
   v.       )    CIVIL ACTION
            )    NO. 18-11553-JGD
NANCY A. BERRYHILL, Acting  )
Commissioner of Social Security, )
            )
     Defendant.  )

## MEMORANDUM OF DECISION AND ORDER ON CROSS-MOTIONS REGARDING DENIAL OF SOCIAL SECURITY BENEFITS

June 11, 2019

DEIN, U.S.M.J.

### I. INTRODUCTION

The plaintiff, Diane Weeks, has brought this action *pro se*, pursuant to section 205(g) of

the Social Security Act, 42 U.S.C. § 405(g), in order to challenge the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her claim for

Social Security Disability Insurance ("SSDI") benefits.  The matter is presently before the court

on the plaintiff's "Motion for Order Reversing the Commissioner's Decision" (Docket No. 15), by

which Weeks requests an order vacating the Commissioner's decision and remanding the

matter to the Social Security Administration for further administrative proceedings.  This matter

is also before the court on the "Defendant's Motion for Order Affirming the Decision of the

Commissioner" (Docket No. 17), by which the Commissioner is seeking an order upholding her

decision that the plaintiff is not disabled and is therefore not entitled to SSDI.

The principal issue raised by the parties' motions is whether the Administrative Law Judge ("ALJ") properly evaluated the plaintiff's residual functional capacity. The plaintiff argues that the ALJ erred in misconstruing a family trip as a vacation and failing to consider that she was self-medicating using alcohol during the relevant period. The court's inquiry is a limited one that focuses primarily on whether the ALJ's decision is supported by "substantial evidence." Applying the mandatory standard of review, and as detailed more fully below, this court concludes that the ALJ's decision was supported by substantial evidence in the record. Accordingly, the plaintiff's motion to reverse is DENIED, and the Commissioner's motion to affirm is ALLOWED.

## II. <u>STATEMENT OF FACTS</u>[1]

Weeks was born on April 29, 1960 and was 53 years old as of the date she was last insured in June 2013. (Tr. 35, 62). She contends that she has been unable to work since May 2008. (Tr. 173).

Weeks completed high school, attended two years of trade school, and two years of design school. (Tr. 1091). Weeks worked as a technical designer in women's apparel until 2004 when she was let go. (Tr. 36-37, 46). She subsequently performed freelance work as a technical designer but has not worked since 2010. (Tr. 46-47). She has three children between the ages of 16 and 23 and lives with her husband in Sharon, Massachusetts. (See Tr. 35, 38).

The claimant has a history of regular alcohol use dating back to high school as well as a family history of alcoholism. (Tr. 351, 372). Within a short span of time in 2004, the claimant's

---

[1] References to pages in the transcript of the record proceedings shall be cited as "Tr. __." The ALJ's Decision shall be cited as "Dec." and can be found beginning at Tr. 15.

mother died suddenly, her family purchased a new home without first securing a buyer for their existing home, and the claimant lost her job. (Tr. 395). As a result of these stressors, the claimant's alcohol usage increased substantially to over one bottle of wine per day. (Tr. 362, 804). Between 2009 and 2012, Weeks visited the emergency room numerous times for alcohol withdrawal and repeatedly underwent in-patient alcohol treatment.

In March 2009, she was hospitalized for alcohol withdrawal. (Tr. 274). Upon discharge, she was listed as being alert, cooperative, oriented, in good condition with a fair rehabilitation potential. (Id.). In August 2009, she was hospitalized after suffering seizures and falling at home. (Tr. 275, 278, 315). She denied having symptoms of depression, other than some problems with motivation and denied having suicidal ideation or a history of self-harm. (Tr. 276). She was observed as being calm, cooperative, alert, oriented, with constricted affect, moderately dysphoric mood, intact attention and memory, and no apparent cognitive deficits. (Id.). Her speech was noted as being coherent and goal-oriented. (Id.). There was no evidence of delusions or hallucinations and her insight and judgment were observed as grossly intact. (Id.).

Weeks was again hospitalized in September 2009 in connection with alcohol withdrawal-related seizures. (Tr. 343). Upon discharge, she was diagnosed with major depression. (Tr. 346). Her mental status was listed as alert and oriented. (Tr. 347). The claimant was next hospitalized in April 2010. (Tr. 357). She was described as being "under a lot of social stress[,]" being a very anxious person in general, and being unable to control her anxiety symptoms. (Id.). During her physical exam, she was observed as being alert and oriented. (Tr. 358). She was noted as being "very anxious," but answered questions

3

appropriately and was cooperative throughout the examination. (Id.). After her discharge from the hospital, she was admitted to the emergency room later that day upon experiencing stiffness and shaking of her extremities. (Tr. 365). A mental status examination was conducted and the claimant was observed to be alert and oriented with a somber mood and depressed affect. (Id.). She was not psychotic, had no suicidal ideation, and no homicidal ideation, although she had "very limited insight into her alcoholism." (Id.). The next day, the plaintiff underwent a mental status assessment as part of intensive outpatient treatment of her alcoholism. (See Tr. 464-65). She reported that she handled anxiety and stress by drinking. (Tr. 465). At the time of the assessment she reported only mild depression and no anxiety. (Id.).

During outpatient treatment for alcoholism in May 2010, Weeks was characterized as having slightly elevated levels of anxiety and a depressed mood, but remained emotionally stable. (Tr. 453). In June 2010, Weeks was admitted to the ER for alcohol withdrawal. (Tr. 368). She was observed to be alert and oriented and did not appear intoxicated. (Id.).

A mental status assessment of the plaintiff from July 2010 indicates that her memory and thought process were intact. (Tr. 497-98). She reported moderate depression that had lasted continuously over the past six months. (Id.). Her symptoms of depression included poor appetite, loss of interests, and low energy. (Id.). She also reported moderate anxiety and admitted that the way she normally handled anxiety was to take a drink. (Id.). The clinician noted that Weeks had poor eye contact and her body language suggested depression. (Tr. 501).

Emergency room records from November 2010 indicate that the claimant was admitted for alcohol withdrawal. (Tr. 370). Her mental status was observed as "normal," with no

hallucinations, delusions, or thoughts of self-harm. (Id.). Her inpatient hospitalization records from November 2010 indicate that she was seeing a therapist at the time of her admission, but was not on any psychiatric medication. (Tr. 372). During her hospitalization, she denied having any history of suicidal or homicidal ideation, or a history of inpatient hospitalization for psychiatric illness. (Id.). Her mental status exam indicated that she was well-kempt, cooperative, with good impulse control, euthymic mood, and a goal-directed thought process. (Tr. 375-76). Her memory was also listed as being intact, with fair insight and judgment. (Tr. 376-77).

At a psychiatric consultation performed on December 9, 2010, the claimant reported a history of depression, but denied having severe depression. (Tr. 394). During the consultation, she claimed not to feel depressed or suicidal, instead feeling optimistic about the future and remaining sober. (Id.). A mental status exam revealed that the claimant was alert, oriented, cooperative, with grossly intact cognition. (Tr. 396). She also maintained good eye contact, with an organized thought process, and her mood was not depressed. (Id.). The clinician conducting her psychiatric consultation noted that she "does not currently endorse symptoms suggestive of a major depressive episode." (Id.). The clinician acknowledged that a "substance-induced mood disorder may have been present," but that it "has been resulving [sic] gradually." (Id.).

Between 2010 and 2012, the plaintiff was able to maintain her sobriety for a period of fourteen months before relapsing again. (See Tr. 548). She was admitted to the ER in March 2012 requesting detoxification. (Tr. 441). At the time she denied any acute psychiatric symptoms or suicidality. (Id.).

From April 2015 to the present, Weeks has maintained her sobriety and attends Alcoholics Anonymous ("AA") meetings. (Tr. 42). In the Spring of 2015, Dr. Alexandra Accardi, a psychiatrist, began treating the claimant for anxiety and depression. (See Tr. 1002). Dr. Accardi has since opined that the plaintiff suffers from debilitating depression, exhibiting paranoid ideations and disorganized thoughts and speech. (Tr. 1087). Two state agency medical consultants who evaluated the claimant's disability claim in late 2015 and early 2016 concluded that the plaintiff suffers moderate limitations in social functioning and maintaining concentration as a result of her depression and anxiety. (Tr. 68-69, 80-81).

In August 2016, the claimant was examined by Dr. Barry Roth, who determined that she suffered from major depression and mild neurocognitive deficit, and that her mental health issues interfered with her ability to work. (Tr. 1089-90, 1092). In early 2017, Weeks was also evaluated by a neuropsychologist who found that Weeks had severe symptoms of depression and significant symptoms of anxiety, trauma, and insomnia. (Tr. 1095, 1098). The neuropsychologist further concluded that Weeks had symptoms consistent with a mild neurocognitive disorder. (Tr. 1099).

At a hearing before an ALJ, Weeks testified that she has difficulty getting out of bed, and that her sister helps her with grocery shopping, preparing meals, and cleaning the house. (Tr. 39, 44-45). She reported being unable to concentrate on reading and having difficulty recalling the sequence of events in television shows as well as following instructions. (Tr. 40, 49). Weeks also asserts that she has difficulty sleeping and often lacks motivation. (Tr. 210-11).

Weeks was last insured as of June 30, 2013, but she asserts that her disability preceded this date.

**Procedural History**

On October 20, 2015, Weeks filed an application for SSDI, claiming that she had been unable to work since May 10, 2008 due to anxiety and depression.  (Tr. 62-63, 173).  Her application was initially denied in December 2015, and upon reconsideration in January 2016.  (Tr. 72-73, 84-85).  The plaintiff subsequently requested and was granted a hearing before an ALJ, which took place on May 31, 2017 in Boston, Massachusetts.  (See Tr. 30).  Weeks, who was represented by an attorney at the time, appeared and testified at the hearing.  (Tr. 32, 35).  The ALJ also heard testimony from a vocational expert ("VE"), who responded to hypothetical questions aimed at determining whether jobs existed in the national and regional economies for an individual with the same age, educational background, work experience, and residual functional capacity ("RFC") as the claimant.  (Tr. 51-53).  The ALJ first asked the VE whether jobs existed in the economy that could be performed by an individual with the same age, educational background, and work experience as the claimant, who was "limited to only occasional interaction with the public, co-workers and supervisors, and would be limited to the performance of simple, routine and repetitive instructions, and lastly, . . . would require a position having only occasional changes in the work environment, and requiring only occasional decision-making."  (Tr. 52).  The VE responded that such an individual could perform work as a janitor, laundry aide hospital cleaner, and a dishwasher.  (Tr. 52-53).  The ALJ subsequently asked a follow-up hypothetical, resulting in the following exchange:

> Q   For my second hypothetical, I'm going to ask you to assume the criteria of Hypothetical 1, but now I'm going to ask you to further assume that this individual would miss two days or more of work per month. These would be unexcused absences related to anxiety or depression. In your opinion, could this individual perform the claimant's past work?

A   No, they could not.

Q   What, if any, jobs exist in the economy such a person could perform?

A   There wouldn't be any competitive, full-time employment, Your Honor.

(Tr. 53).

On July 20, 2017, the ALJ issued a decision denying Weeks's claim for benefits.  (Dec. 1-10; Tr. 15-24).  On September 21, 2017, Weeks filed a request for review of the ALJ's decision by the Social Security Appeals Council.  (Tr. 4).  On May 21, 2018, the Appeals Council denied the plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner for purposes of review.  (Tr. 1-6).  Accordingly, Weeks has exhausted all of her administrative remedies, and the matter is ripe for review pursuant to 42 U.S.C. § 405(g).

**The ALJ's Decision**

The ALJ concluded that from May 10, 2008 through June 30, 2013, the date Weeks was last insured, Weeks "was not under a disability within the meaning of the Social Security Act[,]" which defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." (Dec. 2; Tr. 16).  See 42 U.S.C. § 423(d)(1)(A).  There is no dispute that the ALJ, in reaching his decision that Weeks was not disabled, performed the five-step sequential evaluation required by 20 C.F.R. § 404.1520.  The procedure resulted in the following analysis, which is detailed further in the ALJ's "Findings of Fact and Conclusions of Law."  (See Dec. 3-10; Tr. 17-24).

The first inquiry in the five-step evaluation process is whether the claimant is "engaged in substantial gainful work activity[.]" <u>Seavey v. Barnhart</u>, 276 F.3d 1, 5 (1st Cir. 2001). If so, the claimant is automatically considered not disabled and the application for benefits is denied. <u>See</u> <u>id.</u> In this case, the ALJ found that Weeks worked as a freelance technical designer in 2009 and 2010, but that her total earnings were insufficient to rise to the level of substantial gainful activity. (Dec. 3; Tr. 17). Thus, the ALJ concluded that Weeks had not engaged in substantial gainful activity from May 10, 2008 through June 30, 2013, the date last insured. (<u>Id.</u>; Dec. Finding #2). Therefore, he proceeded to the second step in the sequential analysis.

The second inquiry is whether the claimant has a "severe impairment," meaning an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If not, the claimant is deemed not to be disabled and the application for benefits is denied. <u>See</u> <u>Seavey</u>, 276 F.3d at 5. Here, the ALJ determined that Weeks suffered from the severe impairments of depressive and anxiety disorders and alcohol abuse. (Dec. Finding #3; Tr. 18).

Because the ALJ determined that Weeks had impairments that were severe, he proceeded to step three in the sequential analysis. The third inquiry is whether the claimant has an impairment equivalent to a specific list of impairments contained in Appendix 1 of the Social Security regulations. <u>See</u> <u>Seavey</u>, 276 F.3d at 5; 20 C.F.R. § 404.1520(d). At this step, the ALJ concluded that the plaintiff's impairments, either alone or in combination, did not meet or medically equal any of the listed impairments. (Dec. Finding #4; Tr. 18). Therefore, his analysis continued.

The fourth inquiry in the sequential evaluation process asks whether "the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work[.]" Seavey, 276 F.3d at 5. In order to answer this question, the ALJ must first determine the claimant's RFC. In the instant case, the ALJ assessed Weeks's RFC as follows:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she could occasionally interact with supervisors, coworkers, and the general public; could perform simple, routine, repetitive instructions; and could deal with occasional work environment changes and occasional decision-making.

(Dec. Finding #5; Tr. 20).

In reaching his conclusion regarding Weeks's RFC, the ALJ considered the plaintiff's symptoms and treatment history. (Dec. 6-7; Tr. 20-21). He concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms" were not entirely consistent with the other evidence in the record and chose to only consider these statements "to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (Dec. 7; Tr. 21). He also considered a number of opinions that had been rendered by various treating and non-treating sources. (See Dec. 7-8; Tr. 21-22). The ALJ gave little weight to evidence dated after the date last insured ("DLI"), i.e. June 30, 2013, including the opinions of Dr. Accardi and Dr. Roth. (Dec. 8; Tr. 22). The ALJ also did not give great weight to the claimant's husband's opinion, noting that he was not an impartial source. (Id.). The ALJ gave partial weight to the State agency medical consultants, as their opinions had been rendered using since-replaced "paragraph B" criteria. (Id.).

After explaining the basis for his RFC determination, the ALJ concluded that Weeks was unable to perform any of her past relevant work.  (Dec. Finding #6; Tr. 23).  Consequently, the ALJ reached the fifth and final step in the sequential analysis.

The fifth inquiry is whether, given the claimant's RFC, education, work experience and age, the claimant is capable of performing other work.  See Seavey, 276 F.3d at 5; 20 C.F.R. § 404.1520(a)(4)(v).  If so, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(v).  At step five, the Commissioner has the burden "of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  Seavey, 276 F.3d at 5.  Here, the ALJ relied on the VE's testimony in response to the first hypothetical and concluded that Weeks was capable of performing work that exists in significant numbers in the national economy.  (Dec. 9-10 and Finding #10; Tr. 23-24).  Therefore, the ALJ found that the plaintiff was not disabled under the Social Security Act.  (Dec. Finding #11; Tr. 24).

Additional factual details relevant to this court's analysis are described below where appropriate.

## III.  ANALYSIS

### A.    Standard of Review

In this action, Weeks is seeking judicial review of the Commissioner's "final decision" pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g) (the "Act").  The Act provides in relevant part as follows:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action …. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

> remanding the cause for a rehearing.  The findings of the Commissioner
> of Social Security as to any fact, if supported by *substantial evidence*, shall
> be conclusive ….

42 U.S.C. § 405(g) (emphasis added).  The Supreme Court has defined "substantial evidence" to

mean "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.

Ct. 206, 217, 83 L. Ed. 126 (1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955

F.2d 765, 769 (1st Cir. 1991).

As the First Circuit has explained:

> In reviewing the record for substantial evidence, we are to keep in mind
> that "issues of credibility and the drawing of permissible inference from
> evidentiary facts are the prime responsibility of the [Commissioner]."
> The [Commissioner] may (and, under [her] regulations, must) take
> medical evidence.  But the resolution of conflicts in the evidence and the
> determination of the ultimate question of disability is for [her], not for
> the doctors or for the courts.  We must uphold the [Commissioner's]
> findings in this case if a reasonable mind, reviewing the record as a
> whole, could accept it as adequate to support [her] conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting Rodriguez

v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  Therefore, "the court's

function is a narrow one limited to determining whether there is substantial evidence to

support the [Commissioner's] findings and whether the decision conformed to statutory

requirements."  Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315, 319 (1st Cir. 1981).

The Commissioner's decision must be affirmed, "even if the record arguably could justify a

different conclusion, so long as it is supported by substantial evidence."  Rodriguez Pagan v.

Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

"Even in the presence of substantial evidence, however, the Court may review conclusions of law, and invalidate findings of fact that are 'derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.'" <u>Musto v. Halter</u>, 135 F. Supp. 2d 220, 225 (D. Mass. 2001) (quoting <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)) (internal citations omitted). "Thus, if the ALJ made a legal or factual error, the court may reverse or remand such decision to consider new, material evidence or to apply the correct legal standard." <u>Ross v. Astrue</u>, C.A. No. 09-11392-DJC, 2011 WL 2110217, at *2 (D. Mass. May 26, 2011) (internal citation omitted).

**B.    <u>Plaintiff's Residual Functional Capacity</u>**

The claimant concedes that her pre-DLI records do not support a finding that she was disabled as of the DLI. However, she contends that this is because she was in denial about her depression and anxiety during the relevant period and was self-medicating with alcohol. This court recognizes that substance abuse and mental illness often coincide, and that substance abuse may be an indication that a claimant is attempting to self-medicate an underlying mental illness. Cf. <u>Kangail v. Barnhart</u>, 454 F.3d 627, 629 (7th Cir. 2006) (bipolar disorder can precipitate substance abuse, as the sufferer may attempt to self-medicate); <u>Salazar v. Barnhart</u>, 468 F.3d 615, 622 (10th Cir. 2006) (existence of borderline personality disorder may account for claimant's abuse of drugs and alcohol). However, the mere fact of the plaintiff's alcoholism, without more, is itself insufficient to establish that the ALJ's RFC determination was not supported by substantial evidence. Cf. <u>Adame v. Apfel</u>, 4 F. App'x 730, 734 (10th Cir. 2001) (agreeing with district court that claimant's drug addiction and inability to hold a job were not

specific findings sufficient to establish disability). Accordingly, this court looks to the other evidence in the record to determine whether the ALJ's RFC determination was in error.

### Weight Given to Post-DLI Records

The medical documentation in the record supporting the plaintiff's claim that she was disabled during the relevant period primarily consists of records created by Dr. Accardi and Dr. Roth after the DLI. In a letter dated January 26, 2017, Dr. Accardi characterized the claimant's history of alcoholism as a form of self-medication. (Tr. 1087 ("It appears, through treatment, that Diane began this substance abuse in response to her underlying psychiatric diagnoses as a form of self medication.")). Dr. Accardi went on to opine that the claimant was disabled and that the claimant "still displays no relief of symptoms despite her ongoing sobriety." (Tr. 1088). In a letter dated February 1, 2017, Dr. Roth similarly concluded that the plaintiff experienced "long and serious deterioration before [she] acted on her awareness that she could not drink." (Tr. 1092). Dr. Roth noted that Weeks's work capacity was impaired by her struggle to maintain sobriety, her cognitive deficits, and her "profound depressive symptoms, worsened by the aftermath of her drinking[.]" (Id.). However, because Dr. Roth and Dr. Accardi did not examine or render opinions on the plaintiff until years after the DLI, their medical opinions were given little weight by the ALJ in reaching an RFC determination.

When making an RFC determination, a "retrospective medical assessment may have probative value." Graham v. Barnhart, No. 02-CV-243-PB, 2006 WL 1236837, at *6 (D.N.H. May 9, 2006). An ALJ may consider retrospective diagnoses "to the extent that such opinions both substantiate a disability that existed during the eligible period and are corroborated by evidence contemporaneous with the eligible period." Marcotte v. Callahan, 992 F. Supp. 485,

491 (D.N.H. 1997) (citing Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 (1st

Cir. 1987)); see Villa-Garcia v. Comm'r of Soc. Sec., No. CIV. 10-2200 (CVR), 2011 WL 5240161,

at *8 (D.P.R. Nov. 1, 2011) ("Medical evidence may still bear upon the severity of a claimant's

condition before the expiration of his/her insured status and courts have considered that post-

coverage medical evaluations have some evidentiary value if they contribute to the overall

critical picture of the claimant's condition during the relevant period of coverage.").

Here, the ALJ did consider the post-DLI records provided by the plaintiff, including the

diagnoses of Dr. Accardi and Dr. Roth, but afforded these records little weight.  While Dr.

Accardi supports the plaintiff's assertion that she had been self-medicating with alcohol during

the relevant period, Dr. Accardi's diagnoses of severe depression and anxiety are stated in the

present tense, and she does not state that the claimant was disabled as of the DLI.  Similarly,

Dr. Roth's opinion relates back only to the date of his examination of the plaintiff, not the DLI.

See Dias v. Colvin, C.A. No. 15-13003-ADB, 2018 WL 988053, at *11 n.14 (D. Mass. Feb. 20,

2018) (drawing distinction between retrospective diagnoses that explicitly relate back to the

relevant time period and those that do not).  In light of the multi-year gap between the DLI and

the diagnoses of Dr. Accardi and Dr. Roth, and given that these diagnoses relate to the

plaintiff's mental status as of the date of examination, and do not explicitly relate back to the

DLI, the ALJ was permitted to afford lesser weight to these records.  See Viveiros v. Berryhill,

C.A. No. 15-13100-ADB, 2018 WL 3057730, at *8 (D. Mass. June 20, 2018) (ALJ acted properly in

choosing not to give controlling weight to medical opinion rendered five years after DLI and

written in the present tense).  Moreover, as detailed below, the record does contain

information about the plaintiff's condition during the relevant period. Such evidence supports

the ALJ's determination that Weeks was not disabled prior to June 2013.

<u>**Substantial Evidence of RFC Determination**</u>

Apart from the issue of the weight afforded to the post-DLI records, the plaintiff appears

to take issue with the ALJ's RFC finding generally. To successfully contest a RFC determination,

a plaintiff "must show not only the existence of evidence in the record *supporting* her position

but must also demonstrate that the evidence relied on by the ALJ is either insufficient,

incorrect, or both." <u>Greene v. Astrue</u>, C.A. No. 11-30084-KPN, 2012 WL 1248977, at *3 (D.

Mass. Apr. 12, 2012) (emphasis in original).

This court is unable to conclude that the evidence relied on by the ALJ was insufficient

or incorrect as it relates to the plaintiff's RFC. In group therapy sessions that spanned much of

the relevant period, the plaintiff's mood and affect ranged from dejected or anxious to normal.

(Tr. 559, 560, 562, 564, 568, 574, 576, 577, 579, 581). The plaintiff has never been hospitalized

for psychiatric treatment, only alcohol abuse. (<u>See</u> Tr. 276, 365). While her alcohol-related

hospitalizations frequently included mental health examinations, the clinicians who

administered these examinations consistently observed that the plaintiff was alert, cooperative,

and oriented, without delusions or hallucinations. (Tr. 274, 276, 347, 358, 365, 370, 396).

During her hospitalizations, she repeatedly denied having suicidal or homicidal ideations or

thoughts of self-harm. (Tr. 276, 360, 365, 370, 372, 375-76). Although her insight was

sometimes listed as poor or fair, due to the plaintiff's then-denial about her alcoholism, the

plaintiff's memory, thought process, and cognition were consistently found to be intact. (Tr.

276, 498, 376-77, 396). The clinicians who administered these mental health examinations

knew of the plaintiff's history and ongoing struggle with alcoholism, yet they nonetheless found that her symptoms of anxiety and depression were not debilitating.

There is additional evidence supporting the ALJ's conclusion that she was not disabled during the relevant period. For example, during this period Weeks took on the responsibility of acting as a caretaker for her aunt, who came to live with the plaintiff after being diagnosed with Alzheimer's Disease. (Tr. 528, 549). The plaintiff also self-reported in November 2015 that she continued to engage in a number of activities after the DLI, including preparing simple meals, light housework, such as laundry and dishwashing, driving, incidental grocery shopping, and attending her children's sports events. (Tr. 212-14). While the plaintiff undoubtedly suffered from significant anxiety and depression prior to the DLI, the objective assessments of the plaintiff's mental status from that period, along with the plaintiff's own characterizations of her activity level, provides sufficient evidence in support of the ALJ's RFC determination.

### ALJ's Assessment of Plaintiff's Trips During the Relevant Period

The plaintiff further alleges two inaccuracies as to the ALJ's RFC analysis. In evaluating the plaintiff's RFC, the ALJ noted that, during the relevant period, the claimant was able to take her daughter to New York City. (Dec. 8; Tr. 22). The claimant asserts that this does not provide evidence of the plaintiff's ability to manage herself because her husband accompanied her on the trip and the claimant relied on medication to control her anxiety. (See Docket No. 19 at 3). The claimant also asserts that, despite the ALJ's statement that "[t]he same month as the date last insured, [the clamant] reported going on vacation with family," she did not go on any such vacation. (Dec. 8; Tr. 22).

As to the existence of a family vacation, the ALJ relied on a medical note, dated June 4, 2013, which states that the plaintiff "[h]as [a] two week vacation planned [with] family." (Tr. 734). Elsewhere in the record, a treatment record dated August 21, 2013 indicates that the plaintiff cancelled a therapy session due to a "family vacation in [the] Berkshires." (Tr. 588). Given that the medical record the ALJ relied upon merely stated that such a vacation was "planned," and another record from August 2013 references a cancellation due to a family vacation, the ALJ's characterization of the trip as having occurred in June 2013 (i.e. the month of the DLI) appears to have been inaccurate, as the trip seems to have taken place in August 2013, after the DLI.

In spite of this apparent factual inaccuracy, the ALJ's decision does not substantially rely on either the timing of the family vacation or the claimant's trip to New York City with her daughter. Rather, the ALJ listed them as two examples in a laundry list of other observations the ALJ made about actions the claimant was able to take during the relevant period, despite her depression and anxiety. As discussed above, the ALJ's RFC determination was supported by substantial evidence in the form of numerous psychiatric examinations of the plaintiff from the relevant period, as well as self-reports about her activities. Accordingly, any factual error as to the timing of the plaintiff's vacation or the characterization of her trip to New York City was harmless.

### C. Hypotheticals Posed to VE

In her appeal to the Appeals Council, the plaintiff argued that the ALJ's analysis at step five was not supported by substantial evidence. (See Tr. 272-73). While the plaintiff does not

explicitly reassert this argument here, in light of her *pro se* status, this court liberally construes her filings as taking issue with the ALJ's step five analysis.

"At step five in the analytical process, the Commissioner must provide evidence that the claimant can still perform work that exists in significant numbers in the national economy." Thomas v. Comm'r of Soc. Sec., C.A. No. 14-13819-JGD, 2016 WL 1170965, at *7 (D. Mass. Mar. 24, 2016). This evidence may be provided in the form of an opinion from a VE that the claimant can still perform such work. Sousa v. Astrue, 783 F. Supp. 2d 226, 235 (D. Mass. 2011). The VE's opinion qualifies as substantial evidence at step five of the ALJ's analysis if the opinion was provided "in response to a hypothetical that accurately describes the claimant's limitations." Id. Accordingly, hypotheticals posed to VEs "should be crafted carefully to reflect a claimant's RFC[.]" Wiederholt v. Barnhart, 121 F. App'x 833, 839 (10th Cir. 2005).

The first hypothetical posed to the VE mirrored the ALJ's ultimate RFC finding and the ALJ relied on the VE's response in concluding that the claimant was not disabled. The added restriction in the second hypothetical, namely, that the claimant would miss two or more days of work per month, was not incorporated into the ALJ's analysis. The ALJ's second hypothetical appears to have been based on the claimant's self-reported symptoms of occasionally being unable to get out of bed. At the hearing, the claimant testified as follows:

> Well, sometimes it's, like, it's almost like a physical, like I just – I can't get my body moving. And it's, you know, the mind and the body, two different things going on, I guess, so there are days that I don't get up to see my boys off, but like I said, I try to keep that to a minimum so that they don't worry.

(Tr. 45). Dr. Accardi similarly reported that the claimant "has days when she has difficulty with the smallest task[,] as rising from rest to begin her day." (Tr. 1088).

This court finds that the ALJ did not err in failing to incorporate the added limitation that the claimant be permitted two or more unexcused absences per month in his assessment of the claimant's RFC. This limitation is not directly tied to any medical evidence of symptoms that specifically prevented the plaintiff from working two or more days per month prior to the DLI. As discussed <u>supra</u>, the ALJ was permitted to give less weight to Dr. Accardi's assessment. Further, the ALJ found some of the plaintiff's statements to be inconsistent with other evidence in the record, and only chose to consider her statements to the extent they were consistent with other evidence. (Dec. 7; Tr. 21). Medical records from the relevant period do not make mention of the plaintiff's inability to get out of bed, or otherwise identify a symptom rendering the plaintiff unable to work for the entirety of two or more days per month. While "an ALJ must comprehensively describe the claimant's limitations in the hypothetical question [posed to the VE], she is not required to include limitations found not credible or not supported by the evidence." <u>Johnson v. Colvin</u>, 204 F. Supp. 3d 396, 415 (D. Mass. 2016). Here, the evidence did not require the ALJ to include the limitation added to the second hypothetical. Accordingly, the ALJ did not err in relying on the VE's response to the first hypothetical in concluding that the plaintiff was not disabled. <u>See</u> <u>Amaral v. Comm'r of Soc. Sec.</u>, 797 F. Supp. 2d 154, 164 (D. Mass. 2010) ("The hearing officer's reliance on the second hypothetical naturally flows from his finding regarding [the claimant's] credibility and the limited weight he assigned to the treating sources.").

## IV.  <u>CONCLUSION</u>

For all the reasons detailed herein, the plaintiff's Motion for Order Reversing the

Commissioner's Decision (Docket No. 15) is DENIED and the defendant's Motion for Order

Affirming the Decision of the Commissioner (Docket No. 17) is ALLOWED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge
